FILED
2018 Feb-17  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GLENDA LOCKHART, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.:** |
| | ) | **5:16-cv-1699-MHH** |
| **ANA FRANKLIN, et al.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## RESPONSE TO MOTION TO DISMISS

COME NOW, the Plaintiffs, Glenda Lockhart and Straightline Drywall and Acoustical, LLC ("Straightline"), by and through their undersigned attorneys of record, and hereby respond to the Defendants' Motion to Dismiss, as follows:

## INTRODUCTION

Defendants' brief in support of its Motion to Dismiss (the "Motion") (Doc. 57) is premised upon the incomplete assertion that Plaintiffs' claims "stem[] from the execution of a search warrant on October 6, 2016, on the business of Straightline Drywall, owned by Glenda Lockhart." While it is true that the execution of the subject search was improper (as discussed below), this case truly originates with Defendants' desperate desire to silence the truth about Defendants' corruption. As alleged in the Second Amended Complaint, the Defendants' conduct at issue in this case also involves Defendants' role in: (1) unlawfully installing and using

1

"keylogger" software without a warrant to intercept Plaintiffs' communications and request a search warrant, (2) obtaining the subject search warrant under false pretenses, (3) failing and refusing to return several items of Plaintiffs' property as required by law, (4) destroying and damaging Plaintiffs' property, and (5) when she still was not quiet, publicly slandering Plaintiff Glenda Lockhart in a press release.

As provided herein, Defendants fail to state any proper basis to dismiss Plaintiffs' First Amendment claim, Fourth Amendment claim, state law claims (intentional interference with contractual relations, civil conspiracy, invasion of privacy and slander per se) or claim arising under 18 U.S.C. § 2511. Moreover, complete discovery is needed before this Court can undertake any meaningful evaluation of Plaintiffs' claims.

## STANDARD OF REVIEW

When evaluating Defendants' Motion, if treated as a motion to dismiss (discussed below), the Eleventh Circuit presumes the truth of all factual allegations in Plaintiffs' Complaint. *United States v. Pemco Aerplex, Inc*., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc). The Court also construes Plaintiffs' allegations liberally because the issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *See Davis v. Monroe County Bd. of Educ*., 120 F.3d 1390, 1393 (11th Cir. 1997); *See also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (stating that "all the Rules require is 'a short and plain statement

of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). Once the claim is identified, the Court will not dismiss the complaint under Rule 12(b)(6) unless it concludes "that the Plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *St. Joseph's Hosp., Inc., v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir. 1986).

If treated as a motion for summary judgment, the Court must enter an order of summary judgment when, taking the facts in the light most favorable to the nonmoving party, there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918, 919 (11th Cir.1993) (citations omitted). "Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). Likewise, all inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 84 F.3d 1380, 1383 (11th Cir.1996).

3

**<u>ARGUMENT</u>**

I.   **DEFENDANTS' MOTION TO DISMISS SHOULD BE DEEMED A MOTION FOR SUMMARY JUDGMENT BECAUSE IT ATTACHES DOCUMENTS NOT REFERENCED IN THE PLEADINGS.**

Plaintiffs acknowledge that the subject search warrant is referenced in the Second Amended Complaint, but those documents attached as Exhibit A to Defendants' Motion attaches more than just the search warrant. Defendants attach a 2-page affidavit of Blake Robinson and some sort of evidence log. Neither of these attachments can credibly be deemed incorporated by reference into Plaintiffs' Second Amended Complaint when only page 4 of 6 of Doc. 57-1, entitled "Search Warrant" is actually referenced in the Second Amended Complaint.

It is strange that footnote 1 of the Motion references only the search warrant in its argument concerning incorporation by reference, but in the body of the Motion, Defendants acknowledge that Blake Robinson's affidavit is also attached. The evidence log is not discussed in either place. Defendants are fast and loose with their "incorporation by reference" argument. The law cited by Defendants states that attachments to pleadings may be rightfully incorporated by reference when their authenticity is undisputed. Currently, Defendants cannot truthfully state that the authenticity of the affidavit and evidence log are undisputed. Plaintiffs will need discovery on these matters to determine what disputes exist concerning these documents.

"Rule 12(b) provides that when matters outside the pleadings are presented, a motion to dismiss shall be treated as a motion for summary judgment." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 853 (11th Cir. 2000). In general, exhibits provided in support of motions to dismiss under *Rule 12(b)(6)* are considered "matters outside the pleading" and effectively convert the motion into a motion for a summary judgment. *Fed. R. Civ. P. 12(b)*. As such, Defendants' Motion is due to be converted into a motion for summary judgment.  As a result, Plaintiffs attach the sworn statement of Daniel Lockhart, in part, to refute the statements made in the affidavit of Blake Robinson. (See **Exhibit A** attached hereto).

## II. DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' CLAIMS UNDER THE FIRST OR FOURTH AMENDMENTS.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Objective legal reasonableness is the touchstone." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc). As set forth below, Plaintiffs have properly pled claims for relief under the First and Fourth Amendment.

### A. Fourth Amendment Claim

Plaintiffs assert Defendants' improper extended retention, improper destruction and improper handling and loss of property resulting from the unlawful execution of a search warrant in the face of critical yet protected speech. Defendants argue that they each enjoy qualified immunity with respect to Plaintiffs' Fourth Amendment claims, boldly asserting that the existence of a search warrant gives them absolute and unlimited protection from liability for their actions. This assertion is incorrect, and, at a minimum, this issue is not ripe for consideration until discovery in this matter is complete.

Predictably, Defendants offer no justification as to why Plaintiff's property was retained for an unreasonable length of time, why it was damaged and, in some cases, destroyed, or why certain devices, documents and records have still not yet been returned to Plaintiffs. Instead, Defendants again attempt to convince this Court that the "investigation" and subsequent execution of a warrant must be proper since a warrant was issued, regardless of the facts and circumstances surrounding its issuance and execution. Plaintiffs assert that the warrant in this case was issued under false and misleading pretenses, namely the affidavit of Blake Robinson, who bases much of the information contained in his affidavit on "reliable confidential informant" Daniel Lockhart. (See Doc. 57-1, p. 3 of 6)

For purposes of the Defendants' Motion, Plaintiffs agree that Mr. Lockhart is reliable, and attach his sworn testimony as **Exhibit A**. In the words of Mr. Lockhart,

Defendant Robinson's "goal was to terminate employees [of the Morgan County Sheriff's Department] feeding the [Morgan County Whistleblower] information." (*Id.* at 10) Mr. Lockhart testified that Mr. Franklin explicitly told him that "nothing would happen to [his] grandmother." (*Id.* at 49) Mr. Lockhart further testified that Morgan County Sherriff's Department employee Justin Powell gave him keylogger software to be installed on the Plaintiffs' computers when Ana Franklin was not satisfied with the information Mr. Lockhart provided to her. (*Id.* at 22) According to Mr. Lockhart, "Everything you type will be saved on a document that I only know how to pull up because it's a sequence of numbers, letters, and everything else, and it's a hidden file. The only way you can pull it up is if you type in that entire sequence of numbers and letters and exclamation points and press enter and it will pull up that secret file. ***The secret file will have every single thing you've done on the computer since I've installed it***." (*Id.* at 41-42) (***Emphasis added***) Mr. Lockhart then turned over passwords to Ms. Lockhart's computer to Ms. Franklin (*Id.* at 42), and Ms. Franklin threatened to arrest him herself if he disclosed to anyone that they had met. (*Id.* at 32-33)[1]

The unreasonableness of Defendants' actions is apparent from Mr. Lockhart's

---

[1] Recently, Morgan County Jail Warden Leon Bradley properly moved to dismiss the misdemeanor count of "tampering with government records" brought against him by the Morgan County Sheriff, arguing that the evidence relied upon was obtained in a warrantless search of Ms. Lockhart using keystroke software provided by Ana Franklin's deputy. (See **Exhibit B**, Motion to Dismiss)

testimony. As this Court previously recognized in its *Younger* analysis (Doc. 10), one focus of Plaintiffs' Fourth Amendment claims center around the manner in which the subject warrant was obtained and executed and the failure and refusal of Defendants to return Plaintiffs' property.

"A seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures'." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). "Officers may incur liability under 42 U.S.C. § 1983 if the warrant is executed in an unreasonable manner." *Williams v. Alford*, 647 F.Supp. 1386, 1389 (M.D. Ala. 1986); *citing Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979). "The test of reasonableness under the Fourth Amendment is a balancing test. 'Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Williams*, at 1389; *citing Bell v. Wolfish*, 99 S.Ct. 1861, 1884 (1979); *quoted in Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502 (11th Cir.1985), cert. denied, 106 S.Ct. 1970 (1986).

This Court has appropriately referred the parties to *U.S. v. Mitchell*, 565 F.3d 1347, 1350-1351 (11th Cir. 2009), which relies upon *United States v. Respress*, 9 F.3d 483, 488 (6th Cir.1993) ("even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must

still be reasonable."). "The reasonableness of the delay is determined 'in light of all the facts and circumstances,' and 'on a case-by-case basis.'" *Id.*, citing *United States v. Mayomi*, 873 F.2d 1049, 1054 n. 6 (7th Cir.1989). "[T]he reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Soldal v. Cook County*, 506 U.S. 56, 71 (1992); see also *United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir.2006).

In *U.S. v. Laist*, 702 F.3d 608, 614-615 (11th Cir. 2012), the Eleventh Circuit provided the following analysis:

> In the past, courts have identified several factors highly relevant to this inquiry: first, the significance of the interference with the person's possessory interest, see *Mitchell*, 565 F.3d at 1351; second, the duration of the delay, see *Place*, 462 U.S. at 709, 103 S.Ct. 2637 (characterizing the "brevity" of the seizure as "an important factor"); third, whether or not the person consented to the seizure, see *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir.2011); and fourth, the government's legitimate interest in holding the property as evidence, see *Burgard*, 675 F.3d at 1033. Moreover, as we explained in *Mitchell*, computers are a unique possession, one in which individuals may have a particularly powerful possessory interest: "Computers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on their computer hard drives." 565 F.3d at 1352.

It is notable that none of the cases cited by Defendant discuss the effect of the improper extended retention of property, the improper destruction of property or the improper handling and loss of property resulting from the unlawful execution of a search warrant in the face of critical yet protected speech, as alleged by Plaintiffs.

9

*See Hudson v. Michigan,* 126 S.Ct. 2159, 2170 (2006) ("Destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression"); *citing U.S. v. Ramirez*, 118 S.Ct. 992 (1998). *See also Williams v. Alford*, 647 F.Supp. 1386 (M.D. Ala. 1986) (holding "conduct of police officers in executing a search warrant is always subject to judicial review as to its reasonableness"); *Dalia v. United States*, 441 U.S. 238 (1979).  Moreover, Defendants' partial return of Plaintiffs' property was only performed in the face of proceedings likely to yield an order compelling the return of their property. It certainly was not done gratuitously or voluntarily, and the wrongful retention of many items continues to occur over one year after the TRO hearing. (See **Exhibit C**, Receipt of property signed by Griff Belser, Esq. identifying property returned and not returned)

Plaintiffs' allegations contain facts which can only be violative of policies, procedures and practices of the Morgan County Sheriff's Department.  Otherwise stated, the Defendants' actions were willful, malicious, fraudulent, in bad faith, or beyond each Defendant's authority, and the therefore the Defendants' holding of Plaintiffs' evidence, which continues even to present with respect to certain items, cannot reasonably be viewed as legitimate.  Discovery must be conducted to present specific policies, procedures and/or practices which were violated by the Defendants.

Defendants admit that the burden rests on them to prove that they acted within their discretionary authority, and they admit that they must show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (*quoting Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)).

Based on the foregoing, Plaintiffs' Fourth Amendment claim is proper. Alternatively, Plaintiffs request discovery regarding Defendants' actions in obtaining and carrying out the subject search warrant, and their actions in damaging Plaintiffs' property and failing and refusing to return Plaintiffs' property in order to review the reasonableness of Defendants' actions.

### B.    First Amendment Claim

"An individual has a viable First Amendment claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." *Lozman v. City of Riviera Beach*, 39 F.Supp3d 1392, 1405 (S.D.Fla.2014); *citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "To prove causation, a plaintiff must prove that his speech was the "but-for" cause of the allegedly retaliatory action, *Fairley v. Andrews*, 578 F.3d 518 (7th Cir.2009), which may be accomplished with proof of: (1) an unusually suggestive temporal proximity

between the protected activity and the allegedly retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lozman*, 39 F.Supp3d at 1405, citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007).

Plaintiffs have properly pled a First Amendment retaliation for which relief may be granted under FRCP Rule 12(b), and genuine issues of material fact exist to preclude summary judgment. The Second Amended Complaint demonstrates the required proximity between the protected activity and the Defendants' retaliatory acts, as well as a pattern of antagonism coupled with timing. Ms. Lockhart, via the Morgan County Whistleblower, engaged in speech critical of each of the Defendants in the months leading up to the installation of keystroke software and at the time when the subject search warrant was executed.[2]

A recent decision by the Eastern District of Louisiana, *Anderson v. Larpenter*, 2017 WL 3064805 (E.D. La. 2017), analyzes a similar situation to the one at bar wherein a search warrant was issued. In *Larpenter*, the court's opinion begins, "Some qualified immunity cases are hard. This case is not one of them." In *Larpenter*, the Terrebonne sheriff's office executed a search warrant related to a

---

[2] Moreover, while Defendants stayed this case for the last year under the auspices of a criminal investigation of Glenda Lockhart, she has not been arrested, and on September 25, 2017, Defendants were unaware of any "active criminal investigation wherein charges would be brought against Glenda Lockhart". (Doc. 45).

"criminal defamation" investigation. The warrant was issued to search the home of a blogger whose blog concerned the use of public funds and nepotism by government officials in Terrebonne Parish. Using the search warrant, the Terrebonne sheriff's office seized computers and other personal electronic devices.

In *Larpenter*, the blogger sued the Terrebonne sheriff under the First and Fourth Amendments among other torts, and in analyzing these claims, the court also pointed out that the blogger's "speech amounted to an 'expression on public issues'—namely, the expenditure of public funds on a public entity's insurance contracts." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982); see also *Kincade v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir. 1995) ("[S]peech about the use of public funds touches upon a matter of public concern."). Such speech rests on the "highest rung of the hierarchy of First Amendment values." *Claiborne Hardware Co.*, 458 U.S. at 913; see also *Bausworth v. Hazelwood School Dist.*, 986 F.2d 1197, 1199 (8th Cir. 1993) (Arnold, J., concurring) ("[S]peech that either directly, or by reasonable inference, criticizes public officials' use of the public's funds lies at the core of the speaker's First Amendment rights.").

Like the blogger in *Larpenter*, Plaintiffs are clear in their Seconded Amended Complaint that the Morgan County Whistleblower aimed to expose corruption in the Morgan County Sheriff's Department. Much of the corruption exposed involved Ana Franklin's use of public funds, including, without limitation, money dedicated to

feed prisoners at the Morgan County Jail in violation of a federal consent decree, which resulted in Ana Franklin being held in contempt of court.[3] In November 2017, Ana Franklin's ex-boyfriend was charged with twelve felony counts involving matters that Glenda Lockhart first exposed on her blog, and which contributed to the retaliation at the center of this case.[4]  On December 14, 2017, the New York Times exposed a litany of other actions undertaken by Ana Franklin that were reported by Glenda Lockhart on her blog. See Bogdanich, Walt. "*A Sheriff, a Mystery Check and a Blogger Who Cried Foul*", New York Times, December 14, 2017.

In a case within the Eleventh Circuit, *Rich v. City of Jacksonville,* 2010 WL 4403095 (M.D. Florida 2010), Plaintiffs were 20-year members of the First Baptist Church of Jacksonville, Florida who did not agree with the appointment of a new senior pastor (Brunson) and began an "online chat forum" (blog). Plaintiffs maintained the blog anonymously due to the "critical, controversial nature of the topic and his fear of retaliation from the church." Defendant Hinson was a member of the church and worked as a law enforcement officer employed by the Jacksonville Sheriff's Office and served on Brunson's security. The church contacted Hinson for

---

[3] See Remkus, Ashley. "*Sheriff held in contempt and ordered to pay $1,000 fine for jail meal controversy*", Al.com, June 15, 2017.

[4] See Beahm, Anna. "*Alabama ABC agent Zaija, from Morgan County, indicted on 12 felonies*", DecaturDaily.com, November 30, 2017.

purposes of obtaining the name of the blog's anonymous author (blogger), and Hinson opened a criminal investigation into the blog "for the sole purpose of obtaining the identity of the anonymous blogger." Hinson sought and obtained subpoenas from an assistant state attorney employed by the Office of the State Attorney, and identified the author of the blog. As a result, the Church obtained "trespass warnings" against the authors, forcing them to seek a new church.

In *Rich*, the defendant officer's qualified immunity defense failed against the Plaintiffs' claim for retaliation under the First Amendment because the record could not support any legitimate law enforcement interest in issuing the subject investigatory subpoenas. Like the present case, even with the proper paperwork having been completed for "investigatory subpoenas", the warrant issued on the Defendant's self-serving affidavit cannot pass qualified immunity muster.

Plaintiffs' First Amendment retaliation claim is proper and Plaintiffs should be allowed to proceed with their First Amendment claim.

## III.   ABSOLUTE IMMUNITY SHOULD NOT BE APPLIED TO ANY CLAIMS BROUGHT PURSUANT TO ALABAMA LAW.

Defendants do not attack any of Plaintiffs' individual state law claims. Instead, Defendants rest their hopes for dismissal of Plaintiffs' state law claims squarely upon absolute immunity under Alabama law.   These state law claims are intentional

interference with contractual relations, civil conspiracy,[5] invasion of privacy and slander per se.

Defendants are sued in the individual capacity. Thus, absolute immunity is not applicable. The well-settled law after *Cranman v. Maxwell*, 792 So.2d 392 (Ala. 2000), is that state employees sued in their individual capacity are not absolutely immune from suit. *See Cranman*, 792 So.2d at 402 (holding that physician was not entitled to state-agent immunity). The *Cranman* Court clarified state-agent immunity by reasserting the *Restatement of State-agent Immunity* which states in relevant part that,

> "[A] State agent shall not be immune from civil liability in his or her personal capacity (1) when the Constitution or laws of the United States, or the Constitution of this State, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

See *Id.* at 405.

In *Ex parte Estate of Reynolds*, 946 So.2d. 450, 452 (Ala. 2006), the Alabama Supreme Court reiterated the standard set forth in the seminal case *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), for establishing state-agent immunity, as follows:

> This Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity. *Giambrone v. Douglas*, 874

---

[5] Plaintiffs' claim of civil conspiracy is based upon Alabama law.

So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. *Giambrone*, 874 So.2d at 1052; *Ex parte Wood*, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted <u>willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority</u>. *Giambrone*, 874 So.2d at 1052; *Wood*, 852 So.2d at 709; *Ex parte Davis*, 721 So.2d 685, 689 (Ala.1998). "A State agent acts beyond authority and is therefore not immune <u>when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist</u>.' " *Giambrone*, 874 So.2d at 1052 (*quoting Ex parte Butts*, 775 So.2d 173, 178 (Ala.2000)).

(<u>Emphasis added</u>). This Court must now determine whether Defendants acted outside the line and scope of employment. *See Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004) (granting immunity to a deputy sheriff alleged to have been acting in the course and scope of his duties).

In *Burgoon v. Alabama Department of Human Resources, et al.,* 835 So.2d 131 (Ala. 2002), a mother brought suit against DHR when her daughter was murdered while under DHR's custody. *See id.* at 132. The Court, citing *Cranman*, reiterated that state employees sued in their individual capacities enjoy only qualified, not absolute immunity. *See id.* The Court has consistently upheld the rationale it arrived in at *Cranman*.

Defendants improperly assert that as long as they were acting in the line and scope of their duty, this immunity applies even in the face of generalized allegations of malicious or willful conduct. (Doc. 57, p. 12-13). However, Defendants later

acknowledge an exception to their immunity where an officer acts "in bad faith, fraudulently, beyond his authority, or under a mistaken interpretation of the law".

In this case, Plaintiffs have alleged a variety of injuries, including damage to the property and business of the Plaintiffs, based on several intentional torts. One tort, invasion of privacy, is alleged based upon Defendants' intrusion into Plaintiffs' private communications using keystroke software, prior to any search warrant even being issued. (Doc. 35, ₱ 57) Another tort, slander per se, relates to Ana Franklin stating publicly on December 7, 2016 to WAFF 48 News:

> "Nothing was ever done in retaliation to Ms. Lockhart during the number of years that this blog has gone on. Not until her personal agenda, her hatefulness and her vengeance to try and tear this office down, to take this office and myself down, and prepare for another election, ***did she cross the line of criminal activity***," Franklin said. "Citizens are able to have their opinion. They're able to exercise their rights. They're able to discuss freely their opinions politically and personally about me and my office. ***But they are not able to take criminal actions against this office*** or any other citizen without being held accountable."

(***Emphasis added***). Additionally, the tort of intentional interference with business relations for the disruption with Plaintiffs' business and ongoing contracts is alleged, and civil conspiracy is alleged with respect to the coordinated efforts made by Defendants to shut down the Morgan County Whistleblower at any cost.

In the present case, the Defendants acted willfully, maliciously, fraudulently, in bad faith, and beyond their authority. This intent can be easily connected to the actions alleged in the Second Amended Complaint. Defendants exceeded the scope

of their authority by violating their own policies and procedures in obtaining the subject subpoena, executing it, destroying property, failing and refusing to return property, and by slandering Ms. Lockhart in a public press release. These coordinated actions give rise to Plaintiffs' state law torts, including civil conspiracy. These actions should remove absolute immunity. In order to fully determine whether this is the case, Plaintiffs should be allowed an opportunity for discovery regarding the policies and procedures in effect within the Morgan County Sheriff's Department and Defendants' adherence to those policies and procedures in their egregious conduct.[6]

In *Mobile County Department of Human Resources, et al., v. Wheeler*, 815 So.2d 527 (Ala. 2001), a family day care provider brought an action against the Mobile DHR for damages based on the revocation of her daycare license. *See id.* The *Wheeler* Court held that whether employees of DHR were entitled to state-agent immunity could not be resolved on a Motion to Dismiss because no discovery had been taken in the action. *See id.* A proper inquiry into state-agent immunity can only be made at the close of discovery in this action. Defendants have not established state-agent qualified immunity at this stage of litigation. For these reasons, Plaintiffs' state law claims should be allowed to proceed.

---

[6] On December 2, 2016, Plaintiffs served a notice of intent to subpoena policy and procedure information from the Morgan County Sheriff's Department.

### III.   PLAINTIFFS HAVE PROPERLY PLED CIVIL CONSPIRACY.

As provided in the previous section, Plaintiffs' civil conspiracy claims are brought under Alabama law. For the reasons cited in the previous section, Defendants cannot shield themselves from civil conspiracy claims under absolute immunity.

Defendants oppose civil conspiracy under the theory of the intracorporate conspiracy doctrine, citing only *M & F Bank v. First Am. Title Ins. Co*., 144 So. 3d 222, 234 (Ala. 2013). However, *M & F Bank*, the holding that Defendants attempt to rely upon, is distinguishable from this case. In *M & F Bank*, the Alabama Supreme Court only considered whether a corporation can be liable for a conspiracy with its own employee or agents, but it did not consider whether the agents could create a civil conspiracy among themselves. The Court merely held that the acts of the corporate agents were attributed to the corporation. In this case, the Morgan County Sheriff's Department is not named as a party or a co-conspirator, and the Alabama Court has never considered whether agents within a sheriff's department can be liable for a conspiracy among themselves.

However, even if this Court applies the case law of this Circuit in federal civil conspiracy claims to Plaintiffs' state law civil conspiracy claim, the precedent is not exactly what Defendants represent. In *McAndrew v. Lockheed Martin Corp*., 206 F.3d 1031, 1036 (11th Cir.2000) (en banc), the Eleventh Circuit ruled that "under the

doctrine, a corporation cannot conspire with its employees, ***and its employees, when acting in the scope of their employment, cannot conspire among themselves***." (***Emphasis added***). As provided above in the context of absolute immunity, Defendants' acted egregiously and <u>outside</u> the scope of their employment in conspiring to have keystroke software installed on Plaintiffs' computers, in causing a warrant to be issued under false pretenses, in unduly delaying the return of Plaintiffs' personal property (some of which has still not been returned), and in damaging Plaintiffs' personal property.

Accordingly, Defendants' attempt to have Plaintiffs' claim for civil conspiracy dismissed should fail.

## IV.    PLAINTIFFS PROPERLY PLED CLAIMS UNDER 18 U.S.C. § 2511.

Plaintiffs' claims arising under 18 U.S.C. § 2511 are adequately pled and state a proper cause of action as required by FRCP Rule 12(b), and genuine issues of material fact exist to preclude a judgment as a matter of law.[7]

Without any discovery, Plaintiffs cited an abbreviated, non-exhaustive list of specifications of the Ardamax Keylogger 4.6 software ("Software") in the Second Amended Complaint. These specifications are supported by the testimony of Daniel Lockhart, who, again, Defendant Robinson swears is reliable. Mr. Lockhart testified

---

[7] Defendants do not deny installation of the software on Plaintiffs' electronic devices without a warrant as alleged. Defendants merely argue that the secretive software installation and surveillance do not constitute a violation of 18 U.S.C. § 2511.

that the keylogger software allowed him access to "[e]verything you type". He does not distinguish between electronic communications and stored data. Evidently, it was all available to him through the use of this keylogging software. Mr. Lockhart testified:

> ***Everything you type*** will be saved on a document that I only know how to pull up because it's a sequence of numbers, letters, and everything else, and it's a hidden file. The only way you can pull it up is if you type in that entire sequence of numbers and letters and exclamation points and press enter and it will pull up that secret file. ***The secret file will have every single thing you've done on the computer since I've installed it***.

(**Ex. A**, Sworn Statement of Daniel Lockhart, p. 41-42) (***Emphasis added***) Plaintiffs' Second Amended Complaint alleges that "Defendants accessed Plaintiffs' private electronic communications using the Keystroke Software." (Doc. 35, ⁋ 17) This is consistent with the specifications of the software cited by Plaintiffs in the Second Amended Complaint: "Keystroke logging [;] Records all typed keystrokes, passwords and hidden characters".[8] In other words, the recorded keystrokes do not exclude keystrokes made during electronic communications from other keystrokes. According to these specifications, **all** typed keystrokes are recorded. Because Defendants acknowledge in their Motion to Dismiss that electronic communications are explicitly governed by § 18 U.S.C. 2511, there can be no controversy regarding

---

[8] The full extent of the software's applications is currently unknown. Information about the software is publicly available at https://www.ardamax.com/keylogger/

whether electronic communications were intercepted.

Next, Defendants argue self-servingly and without any evidence that the data collected (everything you type) was not collected in *real time*. However, Plaintiffs' Second Amended Complaint makes a contrary allegation. It states that "Defendants intercepted Plaintiffs' electronic communications in real time using the Keystroke Software, and Defendants used the information obtained in their interceptions against Plaintiffs in their efforts to shut down the Whistleblower Blog." (Doc. 35, ₱ 17) "[A]ccepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff", *Hill v. White*, 321 F. 3d 1334 (11th Cir. 2003), it would be improper for Plaintiffs' § 18 U.S.C. 2511 claim to be dismissed for lack of real-time interception.

The specifications alleged in the Second Amended Complaint demonstrate that the keystroke software immediately recorded "websites visited for all browsers", "webcam pictures" and Plaintiffs' "typed keystrokes, passwords and hidden characters".

Defendants' conclusion is further contradicted by those more detailed specifications of the keystroke software found on its website. It is publicly known that the keystroke software has the ability to intercept electronic communications and in real time and immediately provide that information to the "admin", giving the admin immediate access to it. (See https://www.ardamax.com/keylogger/. This is

consistent with Mr. Lockhart's testimony.

As provided above, it is currently unknown to Plaintiffs the extent to which the electronic communications illegally intercepted by Defendants were disclosed to any other person or used in Defendants' "investigation" / attempted prosecution of Plaintiffs, as provided in 18 U.S.C. § 2511(1) (c) and (d). However, Plaintiffs have properly pled both causes of action and should be allowed to engage in the discovery process to determine the extent of Defendants' disclosure and use of the electronic communications under 18 U.S.C. § 2511(1) (c) and (d).

Certainly, Defendants would not have undertaken to install the Software on Plaintiffs' electronic devices if they did not intend to use the information gathered or disclose the information to others within the Morgan County Sheriff's Department.

Based on the foregoing, Defendants' Motion with respect to Plaintiffs' causes of action under 18 U.S.C. § 2511 is due to be denied.

## V.   PLAINTIFFS SHOULD BE ALLOWED TO CONDUCT DISCOVERY PURSUANT TO FRCP RULE 56(F).

As set forth in the affidavit of Brandy M. Lee, counsel for the Plaintiffs (attached hereto as **Exhibit D**), to the extent this Court deems the Motion to be treated as a motion for summary judgment, Plaintiffs need to develop their evidence through discovery. This is evidenced by the barebones and conclusory statements presented to this Court as support for Defendants' Motion.

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny

Defendants' "Motion to Dismiss".

Respectfully submitted,

_/s/ Brandy M. Lee_
Brandy M. Lee

_/s/ Brice M. Johnston_
Brice M. Johnston

OF COUNSEL:

Lee Law Firm, LLC
403 Ninth Avenue
Jasper 35501
Phone: (205) 328-9445
Fax: (800) 856-9028

Johnston Law Firm, P.C.
2100 First Avenue North
Suite 600
Birmingham, Alabama 35203
Phone: (205) 328-9445
Fax: (800) 856-9028

## CERTIFICATE OF SERVICE

I certify that on February 17, 2018, a copy of this pleading was filed electronically
with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent
to all counsel of record via the court's electronic filing system.

J. Randall McNeill

Barnes F. Lovelace

_/s/ Brice M. Johnston_
OF COUNSEL